distribution contract with EMC; (ii) that EMC was demanding price concessions to bring its agreement with Network Engines in line with the pricing that Network Engines was providing to other customers; (iii) that the new distribution contract with EMC would negatively impact the Company's future financial performance; (iv) that the Company would not be able to sustain the growth in its gross margins as a result of the amended contract; and (v) as a result, the Company's positive statements issued during the Class Period were materially false and misleading when made.

34.     The Class Period ends on December 10, 2003. That morning, the Company issued a press release announcing that its distribution agreement with EMC Corporation had been amended, and that all changes would be efffective January 1, 2004. Under the terms of the agreement, Network Engines will experience increased costs relating to the sale of EMC-approved HBAs. The Company further stated that this amendment will result in a decline in the gross profit related to the sale of EMC-approved HBAs and also negatively impact the Company's distribution operations gross profit. Defendant Bryant also disclosed that the amendment will now make gross profit on the sale of EMC-approved HBAs "more in line with our gross profit on the distribution of other third party storage networking products, which has ranged from 7% to 12% of net revenues." Finally, the Company stated that it was considering whether this amendment may have impaired the goodwill and intangible assets associated with the acquisition of TidalWire.

35.     Following the issuance of the December 10, 2003 press release, shares of Network Engines fell $3.92 per share, or 39%, to close at $6.10 per share, on volume of more than 14.396

million shares traded, or almost fourteen times the average daily volume. By December 15, 2003, the stock had fallen an additional 32.8% to close at $4.10 per share.

36. The market for Network Engines' securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Network Engines' securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Network Engines securities relying upon the integrity of the market price of Network Engines' securities and market information relating to Network Engines, and have been damaged thereby.

37. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Network Engines' securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

38. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Network Engines business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Network Engines and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.

Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

39. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Network Engines, their control over, and/or receipt and/or modification of Network Engines' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Network Engines, participated in the fraudulent scheme alleged herein.

40. Defendants were further motivated to conceal the truth about the Company and its operations in order to allow defendant Genovesi to sell 75,000 shares of his personally-held stock at artificially inflated prices for gross proceeds of $783,300.

15

## Applicability Of Presumption Of Reliance:
## Fraud-On-The-Market Doctrine

41. At all relevant times, the market for Network Engines' securities was an efficient market for the following reasons, among others:

(a) Network Engines' stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Network Engines filed periodic public reports with the SEC and the NASDAQ;

(c) Network Engines regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Network Engines was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

42. As a result of the foregoing, the market for the Company's securities promptly digested current information regarding Network Engines from all publicly available sources and reflected such information in the Company's stock price. Under these circumstances, all purchasers of Network Engines' securities during the Class Period suffered similar injury through

16

their purchase of Network Engines' securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

43. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Network Engines who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of The Exchange Act Against And Rule 10b-5 Promulgated Thereunder Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

17

public, including plaintiff and other Class members, as alleged herein; (ii) enable defendant Genovesi to sell 75,000 shares of his personally-held stock at artificially inflated prices for gross proceeds of $783,300; and (iii) cause plaintiff and other members of the Class to purchase Network Engines' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

46. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for the Company's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Network Engines as specified herein.

48. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Network Engines' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Network Engines and its business

operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Network Engines securities during the Class Period.

49. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

50. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Network Engines' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its

19

securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Network Engines' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Network Engines' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Network Engines securities during the Class Period at artificially high prices and were damaged thereby.

52. At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Network Engines was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Network Engines securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of The Exchange Act Against the Individual Defendants

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of Network Engines within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58. As set forth above, Network Engines and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 13, 2004

                                      SCHATZ & NOBEL, P.C.

By: _/s/ Justin S. Kudler_
     Andrew M. Schatz, Esq.
     Jeffrey S. Nobel, Esq.
     Justin S. Kudler (BBO #644824)
     330 Main Street
     Hartford, Connecticut 061016
     Tel.: (860) 493-6292
     Fax: (860) 493-6290

Counsel for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF

I, David Dubrow, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1. I have reviewed the complaint (the "Complaint") and would be willing to serve as a lead plaintiff on behalf of the class (the "Class") as defined in the Complaint, including providing testimony at deposition and trial, if necessary.

2. I did not purchase the security that is the subject of this action at the direction of Plaintiffs' counsel or in order to participate in this private action.

3. My transactions in the securities of Network Engines, Inc. during the Class Period defined in the Complaint were as set forth on Schedule A.

4. During the three years prior to the date of this Certificate, I have not sought to serve, nor have I served, as a representative party on behalf of a class in any private action arising under the federal securities laws except: In re Gemstar-TV Guide International, Inc. Securities Litigation, 02-CV-2775 (C.D. CA 2002); Dubrow et al v. HealthSouth Corp. et al, 03-CV-969 (N.D. Alabama 2003); In re Juniper Networks, Inc. Securities Litigation, 02-CV-749 (N.D. CA 2002); In re Carreker Corp. Securities Litigation, 03-CV-250 (N.D. Texas 2003); and Corwin et al v. Merrill Lynch & Co., Inc. Et al, 02-CV-3366 (SDNY 2002);

5. I will not accept any payment for serving as a representative party on behalf of the Class beyond my pro rata share of any possible recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 7, 2003

_David Dubrow_
David Dubrow

## SCHEDULE A - TRANSACTIONS IN NETWORK ENGINES, INC.

### Purchases in Network Engines, Inc.

| Date | Transactions | Price per share |
|------|--------------|-----------------|
| 11/26/03 | Bought 300 shares | $10.28 |

### Sales in Network Engines, Inc.

| Date | Transactions | Price per share |
|------|--------------|-----------------|
| 12/11/03 | Sold 300 shares | $5.91 |